24-56-66 Michael Hoover versus Justin Due et al. Oral argument not to exceed 15 minutes per side. Counsel Lauterback for the defendant's appellants. Always nice to start off on a heavy note, isn't it? Good morning, my name is Benjamin Lauterback. I represent Justin Due, the appellant in this case, and would respectfully ask to have two minutes of rebuttal time. This is a qualified immunity issue that we have brought before this court to a collateral order. The two primary issues in this case are whether the entry of my client into the home of the appellee, Michael Hoover, was constitutional and or whether the force used after he entered the home was constitutional. And then sub-issues under that, whether those constitutional violations, if they occur, were clearly established before they occurred to the point where a reasonable officer in my client's position would have known. The facts in this case are quite obvious. Most of it was caught on video. We concede the points raised by the appellee as we're required to do at this stage from a factual standpoint. And they are simply this. My client was on routine patrol. He that the caller has advised a male has threatened her with a gun. There are weapons on scene. There's a domestic in progress. Mike Hoover grabbed caller by the neck. He proceeded. Before he arrived, he received another notice from dispatch reaffirming what he had previously been told. Quote, have a domestic male threatened with a gun. That's what my client knew when he arrived on scene and promptly got out of his car. Why would you concede that exigent circumstances, at least under our precedent, is a question of fact? Whether when it's really a mixed question of law, in fact, like probable cause, the ultimate question is a mixed question of law, in fact. But we have said that that mixed question should be decided by a jury. Except when, I don't concede that point for the purpose of this case because there are no disputed facts. Your Honor, the jury... My point is, so there are historical facts, like what happened in the real world outside the context of law. And then there's application of law to fact. And whether the historical facts rise to the level of exigent circumstances, at least as I understand our precedent, is itself a question for the jury. At least, I'll grant you that, at least if there's a genuine issue of material fact. And there's not a genuine issue, and that's where I'm coming from. I understand the court's point, and I respectfully disagree because we have, there are cases in precedent-setting cases, and I've cited a couple of the court, where there were discussions at the unlawful entry level of the case. Not the excessive force portion, but the unlawful entry portion, that weren't considered by the court and qualified immunity was granted. So I would represent the court, there have been precedent-setting cases where that's not entirely the case. If there are undisputed facts, such as there are here, this court, I submit, has the opportunity to take those facts, view them as a reasonable officer would. So now we've crossed past the threshold, we must view them in the eyes of the appellee. Now we go into the point where we view them as a reasonable officer would, under the totality of the circumstances. The totality of the circumstances are exactly the facts. But why couldn't a reasonable, so it's strange to me, I'll be fair, I find our precedent strange, because probable cause, the next question is De Novo, that's Ornelas, and in other contexts, excessive force, it's De Novo. But here, why wouldn't a jury be able to reasonably say, when your client arrived, there didn't seem to be anybody, I know that the one person said he's crazy, but I mean, there was a woman walking around in the garage, seemed okay. Why couldn't a jury conclude that maybe he should have done a little bit more due diligence before he entered the garage? Our position would be, a reasonable jury would see that, based on the facts I've just presented, and as soon as he got out of a there he is at the door, seconds later entry was made, a jury would find that to be a reasonable entry under the exigent circumstances that exist. That's our position, and we believe that the precedent, under these facts, maybe a better way of saying it, there is no precedent-setting case with similar facts that would show just in due before he made entry that his actions were unlawful. There are lots of cases, the Barton case, Judge Gibbons, you've authored that opinion, there are lots of cases out there where, under different facts, certainly not similarly situated, we would represent the court. Are you saying that the garage and the house are the same? That once it was okay to go into the garage, it was okay to sort of push him into the house? I'm going to represent the court, I don't think, I think it would be disingenuous for me to say that the garage and the house are different. I think a garage is a part of the house, and so once you've made entry into the garage, you have entered that for Fourth Amendment purposes. So you're saying it's the same, that once he made entry into the garage, if that was okay, it was okay to go into the house? Based upon the circumstances that existed at the point he entered the threshold of the home, yes, that's our submission, Your Honor, and you get into the excessive force portion at those steps as well, and I don't know if the court's had an opportunity to view the video, it's a great video for cell phone videos, it's pretty darn good, shows everything. You know, to be perfectly frank, when I looked at this case on paper, I was sympathetic to the position that you've argued, but when I looked at the video, I had a completely different view. Are we talking about the entry or the use of force portion? Both. Okay, I'm glad to address any questions the court may have there. I can only rest on the facts that we have based on how we have to look at it. Is it common police practice to punch people in the face? I'm just curious. Under those circumstances, it was referred to as a hard hand contact. A soft hand contact, which we see the parrying and that kind of the grappling, and then once the force utilized by the perpetrator reaches a certain level to require, we would argue a taser could have been used there. Once his arm is grabbed, there's precedent, either launching a taser, drive-stunning a taser, pepper spray wouldn't work because it would have gotten the officer, but there's certainly application there that, yes, that's common police. Under those circumstances, there's a fight. I mean, that's really, when you break it down, there's a fight going on at the time the punch is thrown. His arm has been grabbed, he's pivoting, to throw the punch, the video speaks for itself, and literally a tense, chaotic, rapidly unfolding situation. We're talking about a second time, and our officer could not. He did everything that he was lawfully allowed to do from the excessive force standpoint. Well, the position that the plaintiff takes is that by the time the officer began to, you know, hit him with a closed fist, he had already demonstrated adequately to the officer that he was not armed. At least that's what I understand the position to be. I did not take it to be their position. I took it to be he was, what he's saying is he had released from the grasp when the time the punch. Well, I thought there was this thing about pulling up the shirt so that the officer could see there wasn't a gun. He pulls up the shirt, but he doesn't let him frisk him, doesn't let him pat down his pockets, doesn't let him check his boots. Well, I mean, he's belligerent. Right. I mean, it's a chaotic, tense, rapidly unfolding situation. The jury might believe that the chaos justified your client's actions, possibly, but we're not talking about what the jury can find at this point. I understand, and if we look at the, from a qualified immunity standpoint, and if I digress just a little bit, our position also is the district court did not, and committed plain error when it did not, go into the question of qualified immunity. So you don't really grapple. I have sympathies for your position that if this was a probable cause case, you need to show facts that are very similar under the prong two of the clearly established test, the qualified immunity test. But we have Reed and we have Williams that seem to suggest because exigent circumstances is a fact question, if a reasonable jury could have found that there were not exigent circumstances, that it was clearly established that a warrantless entry into the home would have been unconstitutional and that satisfies prong two. I might have sympathies for you as in your position as an original matter, but we do have that precedent that seems to be basically saying clearly established law at a high level of generality is okay here. I respectfully disagree. In the Williams case, the facts aren't remotely similar to this matter. There's three primary cases that the appellee cites in support of the entry issue. There's Barton versus Martin, there's the Coffey versus Carroll case, and there's the Williams-Maurer case that the court has referenced. None of those cases had similarities to this one. So that wasn't my question. So I agree with you maybe that they're factually distinguishable, but when you actually read their analysis on prong two, it's very conclusory. They just say, well, a jury could have found this, therefore it's clearly established because it's been clearly established for a long time that warrantless entry into the home is enough. What would a jury be establishing? What would a jury be finding that we're not already acknowledging? And how could a reasonable official find that under these same facts? Yeah, so I have sympathies for your position, but we're bound by precedent, right? So that's what Reid and Williams quite clearly seem to suggest. Schreber-Moe also sets precedent to the opposite, and it's not been reversed. So I guess maybe there's conflict there, and I think the court has acknowledged that already this morning. We submit this is a simple qualified immunity case where you balance the facts and you look at it from, you take them from the athlete's position, you look at it from a reasonable officer's position, the totality of the circumstances, and we, and it is our position, the exigent circumstances existed. Now, once the entry is made, we get into the uses of force, and we've broken those down into five separate... Before we do that, the district court established on excessive force simply suggested that all force categorically is excessive if the entry was illegal, and you didn't seem to challenge that conclusion on appeal. So I know you disagree with the entry point, but assume that we, just for the sake of argument, assume that we actually think there was an unlawful entry. Why isn't it enough for us to say that that is sufficient to show that the force was excessive? Because that's not the law, respectfully, and Judge... But you didn't really, you didn't really challenge the district court's analysis on this. I, we, if I may read from my brief, brief is page 19, 2021, somewhere in that ballpark, we do suggest that the court erred in only providing a cursory review over the excessive force claim. The trial court was in error. It dismissed it, had a You can, and we should, evaluate excessive force as a separate matter. You take the unlawful entry out of it. Judge White, you wrote this, it's your language out of out of Gray versus Shelby County, Tennessee, and it cited other precedent. This is a separate action. This court could find that the entry was unlawful and unconstitutional for purposes of a jury. It can also find that the excessive force was not. I would agree with the point, and in fact there seems to be a very helpful Supreme Court case for you. County of Los Angeles versus Mendez. Have you, have you heard of this case? I've heard of that case. Okay, but, but you didn't cite it, and I, on reply, I would suggest that you pinpoint where you actually challenged the district court's position. I, your position seemed to be, at least as I read your brief, that the entry was lawful, therefore you have to independently evaluate the force, and the force was lawful under the totality of the circumstances. But I don't think I see anywhere in your brief where you say, even if the entry was unlawful, the force was still okay. So I would, in some respects, think you forfeited any contrary argument. But, but if you find something in your brief, I'd be, but you'll have your full, you'll have your full reply. Thank you. Our position is we waited. Good morning. My name is Ben Rabin of the Nashville Tennessee Bar on behalf of the plaintiff appellee, Michael Hoover. Before I get into my argument, I just wanted to address the very last point that was discussed about potential waiver of the excessive force question. And regardless of what's in the briefing, and I, I am not sure that I saw a challenge either to the district court as far as the threshold issue of if the initial entry was illegal, then the force is illegal. The district court found that that was waived even below, that that was not argued even in the motions for summary judgment. So even if it is somewhere in the briefing before this court, the district court found that was already waived in the summary judgment pleadings, regardless of what's up here. You think, setting aside any potential forfeiture, have you, have you heard of this Mendez case? It seems to be, so in fairness to you, it wasn't in the in the briefs, but I'll, I can read what it says. An excessive force claim is a claim that a law enforcement officer carried out an unreasonable seizure through a use of force that was not justified under the relevant circumstances. It is not a claim that an officer used reasonable force after committing a distinct Fourth Amendment violation, such as an unreasonable entry. So I think what the court said is you have to look at the force in the circumstances, even if the officer engaged in some impropriate, some Fourth Amendment violation earlier. So it strikes me that maybe if we find this forfeiture, so be it, but like at later stages of this case, it doesn't seem to me to be a workable rule. Well my response would be to look at this court's holdings on that issue, which which I have addressed, which is that basically if, if the initial entry is unlawful, the officer is already illegally there, shouldn't even be there, then any force he uses to affect the arrest that justified the entry is illegal. And I think maybe that's the issue. If he enters the property to use force, then any force that's then used... Yes, categorically illegal. And I think, to be fair, I think there's a sentence in our precedent that says that, but it strikes me as completely incompatible with this later case. I think, I mean, I think it depends... So, and do you think it makes sense? Like imagine, imagine an officer unreasonably enters a home. So I'll grant you that it was an illegal entry. And imagine somebody just starts shooting at the officer. So the officer just can't act in self-defense? I think, I think it depends. I think in, maybe in that scenario, if there's some break in the, in the nexus perhaps, but I think in, and you have cases that we've seen in the news where the officer may be illegally enters, the person doesn't know that, thinks their house is being broken into. They're acting in self-defense, as opposed to... Yeah, so I grant, but, but under the, under your view of the law, it's just categorically excessive. And it just strikes me as unworkable. Because I'll change the hypothetical again and say he knew it was an officer. I mean... I would suggest that I think it depends on what the nexus is of the entry, and if the officer is a kind of a continuum of the basis for the illegal entry, as opposed to there's some unrelated reason why it was illegal, something changes. Whereas here, in this particular case, it's almost one continuous act. And my client is simply asserting his Fourth Amendment rights, and under Tennessee law, a citizen has the right under Tennessee law to use force to defend against excessive force under Tennessee law. So when it's a continuous justification by the officer, I think a citizen has the right to use force, so therefore the officer can't use additional force because the citizen is lawfully asserting his Fourth Amendment rights. So I think maybe it just depends on the facts, but regardless... How do we, how do we determine... I would have viewed the ultimate question of exigent circumstances as an original matter, as a legal one, just like excessive force is legal, just like probable cause is legal. How do we determine... the facts are largely undisputed here. How do we determine whether the undisputed facts create exigence, like whether there's a jury question on that? Because usually I would think of it as a legal question for us to decide if the facts were undisputed. I think it's a mixed question of law and fact, as Your Honor pointed out. I think it depends. I mean, there are certainly cases where this court has found that it's not clearly established, or that the right was not violated. So I think it just depends how clear the facts are, and if a jury could come up to different, come with different conclusions. And I think that this case shows why the facts are so important, and at least in this case, why the facts could support a view that there was no probable cause. There are a lot of facts in the officer's favor. So he knows that there was a threat with a gun. He knows, well at least the caller is saying this. It turns out to be false, actually. But he knows that there was a use of force against the victim. And then he shows up, and you're right, it was very cursory, but he does hear from the woman, who a reasonable person might think was the caller, say he's crazy and he's right over there. I mean, under all those circumstances, it doesn't strike me as all that unreasonable to think, I need to get a handle on this situation. I'm gonna put him in handcuffs, he might have a gun, and then I'll start asking questions. That does not strike me as unreasonable, and then the force obviously escalated because your client refused to be put in handcuffs. So why would an officer think under those facts, there wasn't an exigent circumstances to get control of the situation? Three primary points that I would respond to. First of all, the case law is very clear that the mere presence of a weapon does not create exigency, even if the officer... Yeah, okay, but what about the fact that at least somebody said that there was a presence plus a threat to use the weapon? So the issue is, on that, is that the case law is clear that the question is the situation immediately prior to the entry. So just because, even if it was undisputed, even if the officer had seen that this happened several minutes earlier, the dispositive issue is what's happening immediately prior. We know that there's at least several minutes before the officer gets there, and most importantly, the apparent victim is outside the house. The whole issue here is the crossing of the threshold into the house. That's the million-dollar question. But at this point, the apparent victim is outside, the apparent suspect is inside, and he puts his hands up in the air. So even if there was no doubt, even if he had... I mean, well, I don't want to go too far in the hypothetical, but the point is, no matter what had happened, and there's plenty of case law where we know there was guns, we know that there was things that had happened, if those things are over, if they're not immediately occurring in that moment, then there's no exigency. So does the fact that the victim said he's crazy and he's right there, I mean, an officer might think that if he has a gun, the distance between them isn't necessarily a safe harbor. Well, that's where the issue comes about him having his hands up, and that is probably the absolute most important fact of this entire case, and I've pointed out from a jurisdictional standpoint, the officer in his initial brief doesn't even mention it, and he's required to concede the issue, and the court has to consider that in the light most favorable to my client. I think it's very interesting that I had moved for summary judgment, and it seemed like for me to actually win the case, not just for summary qualified immunity for the officer and challenging that, but for me just to win, and the court seems like it came pretty close, and the court seems to have said if the suspect's hands are up, there is no exigency, period. However, the video, the one thing it does not show is in that exact moment, the video cuts away. The court said that it appears to show that the suspect's hands were up before entry, but we don't know, so therefore, he said, I don't get summary judgment. But when you turn that around and say, okay, now we're looking at the officer's motion for summary judgment, we have to assume, and he has to concede, that my client's hands were up. So if you have, okay, there was a prior threat with the gun, whatever that means, he didn't say I was shot, she clearly has not been shot, whatever that means, his hands are up, there's no, there's no exigency. I mean, if he puts his hands down, different story, but that didn't happen here. So my position is, as long as my client's hands are up, no matter how close or far he is, there is no immediately necessary... So what was the officer supposed to do then? Just like talk to your client from outside the garage? It's what the Fourth Amendment says, Your Honor. Yeah, and I think that's an important distinction. If this was out on the street, if this was in a restaurant, public area, maybe things are different. But for the Fourth Amendment, it's not just about the seizure of the person, very specific about entry to the house. The case law is abundantly clear that that threshold, that magic line, is extremely, I mean, that's of the utmost significance. And so, yes, Your Honor, I think to cross that line, the officer needs exigency. Line to the garage or the line to the house? To the garage. The case law says that the garage is considered part of the house. And so that's the magic line. As long as his hands are up, then yes, Your Honor, the officer... And at least to ask a question. For example, my client's hands are up. Had he just turned to anybody, said, where's the gun? What's the deal with the gun? Taken two seconds, client's hands are still up. He could have been looking at my client, maybe had his hands on his firearm. They could have said, there is no gun. Crisis averted. Had the officer done that, we wouldn't be here. None of this would have happened. And the point is, there was no immediate need for the officer to go in and secure things in that moment, at least if my client's hands are up. What do you... I am troubled. I don't know that it's binding on us by the idea that it's clearly established that warrantless entries without exigent circumstances are unconstitutional. That strikes me as saying it's clearly established that you need probable cause for an arrest. And court clearly has said that that's a level of generality that's way too high and that you need to find similar fact pattern cases with similar facts showing that it wouldn't be probable cause. So in this analysis, it would be cases with similar facts showing that this wouldn't have been exigent circumstances. I think the difference is that this is an exception to the normal Fourth Amendment requirements. Normally when we're talking about an arrest or using force, the question is probable cause. Did the officer have it or not? Here, the real right at issue is the Fourth Amendment right to be secure in your home. Then the courts have come up with these exceptions that are not in the Constitution, but they say we've got to have these exceptions. One of those is exigent circumstances, but the officer has the burden to show that as an exception. So I think I read the cases to say the right at issue is the right to be secure in your home, unless there's a warrant, which we know didn't happen here, and it sort of almost shifts back to the officers. So the officers, so the one argument you made is the officer has the burden. That could be reasonable, but the officer also has the burden to show probable cause, I think. Although, that's not the standard for exigent circumstances. I mean the standard is, is there a real immediate need that the officer has to have objective facts to come up with to enter the house? And that's an exception. That's not the right. That's an exception that courts have recognized. So for the officer to be able to use that, utilize that exception, I mean the case law basically says the officer needs specific objective facts to support that, and he just hasn't here. He can't identify, and to actually look at the facts of this case, I mean he's relied on the emergency aid exception. That's what the district court found, and that's the right at issue. And looking beyond what the standard is, well who needs aid? You've got the parent victim outside, the suspect is inside, two other women that are just there that don't seem particularly troubled. So even if we get past that, looking at the facts of the case, there are several cases that we, that I've pointed to, where even with a concerning call, officer gets there, case law is clear. The officer needs something more than just the call, and the cases basically say... What is your, if you had one case to pick that is most analogous, which one comes to mind? I would look at the Goodwin case that I've cited in my brief, where very similar, where a witness on the scene, not just a dispatch, they get a dispatch call, there's something going on, a woman on the scene says, he's crazy, just like in this case, he's crazy, he ripped him off my necklace, and he says he's gonna kill everyone in the apartment and the police. Very similar facts. But, so I don't know that that case helps you all that much though, because the reason why we sent it to the jury was not on the mix question, it was on whether she had actually said that. It was, we suggested that there was a credibility dispute about what actually happened. So it didn't necessarily say that on those facts there would be no exigent circumstances. What I read it to say is that it was unclear whether those facts actually happened, and so the jury has to resolve that. I think there was some discussion of that, but I mean, I'd again submit that those were the facts that the officers relied on, and I think that, I mean... But we don't have that problem here, we have a video, right? So we know that those facts are what... Yes, I'm referring to the Goodwin case. I think that even though that was mentioned, that there was some dispute about that, I think the court still looked at those facts. I would also look at the United States versus Morgan case, which I believe is a criminal case, but nonetheless, they looked at the exception. A witness personally told the officer that the suspects would kill any officer that tries to arrest them. The officers saw them, I think heard them shooting automatic weapons, loading guns into the car. So you have the threat, you have the guns, but when they got to the house, nothing was amiss. There was no emergency going on, and the court said regardless of the threat to kill officers, regardless of actual knowledge of firearms, they're still... And that's pretty much my whole point. No matter what happened before, there has to be something at the scene that suggests that somebody is in need of emergency aid, or else the officer can either wait and try to get more information, or develop an exigency, or go get a search warrant. And that's what the Fourth Amendment requires when we talk about a house. The officer, you know, they have a lot of power, and in this case, had he just waited, he could have questioned, he would have realized there was no firearm, or if there was, the victim is already outside, the officer could make sure, are you okay? Are you gonna not go back inside? She chose to stay at the scene, and as long as she's not there, there's nothing stopping the officer from going to the magistrate, getting a search warrant, coming back, and arresting the suspect. As long, at least, as long as his hands in the air. Puts his hands down, maybe a different question, but that's not what we have. As long as the hands are in the air, and the victim, alleged parent victim, is outside, no exigent circumstances. Thank you. Thank you. Thank you. Judge, just at your request, at page 19 of my reply brief, and before I go here on the the waiver issue, keep in mind, we didn't see any reason at the summary judgment stage to even bring up whether it was lawful or not, because this well-established law is, they're separate. The entry and the use of force issues are separate, so it wouldn't been any reason to brief it at the summary judgment stage. There would be a reason to brief it on appeal, though. Well, and here we are, my reply, my initial brief, page 19. Make sure I'm right there, yeah. District Court also erred when it only provided a cursory review of the clearly established right prong in its qualified immunity analysis. Further, District Court passed on ruling on the specifics of the use of force in its ruling. Instead, held because it was unclear whether the entry was lawful, if the trier of fact deemed it was unlawful, then any use of force could be deemed to have been gratuitous in nature. An assessment on the use of force under qualified immunity did not otherwise occur. Like every brief I've ever written, do I wish I'd said this, that, or maybe a different way? Sure. I said it. It's in our brief, and as Judge White wrote in Gray v. Shelby County, Tennessee, when a properly stated excessive force claim relates to the manner in which an arrest was carried out and is independent of whether law enforcement had the power to arrest, courts must therefore analyze the excessive force claim without regard to whether the arrest itself was justified. That gets us to excessive force, and in our position is, if you take each incident, there are five, I think we're Mr. Raven is correct, and we evaluate that. If it had been in a restaurant or out on the street, that's, there's no protection, fourth amendment protection when it comes to excessive force after this unlawful entry is made. It is the same as being out on the street or in a restaurant, and if this, just as he suggested, if this had occurred in a street or a restaurant, and this man was trying to be handcuffed, pulls his hand away, and there's this hand fighting, there's a grappling, there's a cinching of the elbow joint, there's a punch, there's continued wrestling, that would not be excessive, and our position is the court, the district court erred should, in qualified immunity, should establish, be established for my client on both issues, especially the excessive force issue. Okay, thank you. Thank you for your time. Thank you both for your arguments today. The case will be submitted and the clerk may call the next case.